[Cite as *State ex rel. Bowling v. DeWine*, 2021-Ohio-2902.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Candy Bowling et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 21AP-380 |
| v. | : | (C.P.C. No. 21CVH07-4469) |
| Michael DeWine et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on August 24, 2021

**On brief:** *DannLaw*, *Brian D. Flick*, *Marc E. Dann*, and *Emily White*; *Advocate Attorneys, LLP*, and *Andrew M. Engel*, for appellants. **Argued:** *Andrew M. Engel.*

**On brief:** *Dave Yost*, Attorney General, *Julie M. Pfeiffer*, and *Allison D. Daniel*, for appellee Ohio Governor Mike DeWine; *Eric A. Baum*, for appellee Director, Ohio Department of Job and Family Services. **Argued:** *Julie M. Pfeiffer.*

**On brief:** *Jones Day*, *Michael R. Gladman*, and *Elizabeth A. Benshoff*, for Amici Curiae Chamber of Commerce of the United States of America and National Federation of Independent Business Small Business Legal Center.

**On brief:** *Vorys, Sater, Seymour and Pease LLP, Daniel E. Shuey*, and *Erica M. Rodriguez*, for Amici Curiae the Ohio Chamber of Commerce, the Ohio Business Roundtable, the Ohio Restaurant Association, the Ohio Hotel and Lodging Association, the Ohio Grocers Association, and the Ohio Trucking Association.

**On brief:** *Policy Matters Ohio*, and *Hannah C. Halbert*, for Amici Curiae Policy Matters Ohio, American Sustainable Business Council, National Employment Law Project, William E. Spriggs, Economic Policy Institute, and Andrew Stettner.

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} After Governor DeWine terminated an agreement with the United States Department of Labor, thereby cutting off certain unemployment benefits authorized by Congress in the wake of the unemployment crisis brought on by the coronavirus pandemic, Shawnee Huff, Candy Bowling, and David Willis (collectively, "Appellants") filed a motion for a temporary restraining order and a preliminary injunction in the trial court against the Governor, Mike DeWine, and Matt Damschroder, the Director of the Ohio Department of Job and Family Services ("Director") (collectively with Governor DeWine, "Appellees"). The Franklin County Court of Common Pleas denied appellants' motion and they filed this interlocutory appeal. As explained below, we conclude that the trial court abused its discretion when it ruled that appellants had no likelihood of success on the merits of their claim, and we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} In response to the unprecedented economic disruption caused by the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act on March 27, 2020. Pub.L. No. 116-136, 134 Stat. 281 (codified at 15 U.S.C Section 9001-9141). Title II of the CARES Act, the Relief for Workers Affected by Coronavirus Act, created a number of unemployment insurance benefits in response to the mass layoffs and job losses attributable to the pandemic. 15 U.S.C 9001 note. These benefits included Pandemic Unemployment Insurance ("PUA"), "a temporary federal program that provides up to thirty-nine weeks of benefits to individuals who are not otherwise eligible for state unemployment insurance benefits." *Islam v. Cuomo*, 475 F.Supp. 3d 144, 155 (E.D.N.Y.2020); *see* 15 U.S.C. 9021. Pandemic Emergency Unemployment Compensation ("PEUC") provided an additional 13 weeks of benefits to individuals who had "exhausted all rights" to regular state or federal unemployment compensation or were otherwise ineligible for such compensation. 15 U.S.C. 9025(A)(2)(a).

{¶ 3} The CARES Act also created Federal Pandemic Unemployment Compensation ("FPUC"). 15 U.S.C. 9023. From March 27 through July 31, 2020, FPUC provided "an additional amount of $600" per week in benefits to individuals receiving unemployment compensation. Pub.L. No. 116-36, Section 2104(b)(1)(B). On December 27,

2020, Congress reauthorized FPUC and allowed a weekly benefit until March 14, 2021 but lowered the benefit amount to $300 weekly. *See* Continued Assistance for Unemployed Workers Act of 2020, Pub.L. No. 116-260, Div. N, Title II, Subtitle A, Ch. 1, Subch. I, Section 203, 134 Stat. 1182, 1953 (codified at 15 U.S.C. 9023 (a) & (b)). The extended benefit period also applied to PUA and PEUC benefits. *See* Pub.L. No. 116-260, section 201 and 206. On March 11, 2021, Congress extended the PUA, PEUC, and FPUC benefit periods until September 6, 2021. *See* American Rescue Plan Act of 2021, Pub.L. No. 117-2, Title IX, Subtitle A, Part 1, Section 9011, 9013 and 9016, 135 Stat. 4, 118-20, codified at 15 U.S.C. 9021(c), 9023(b)(3)(A)(iii) & (e)(2), and 9025(g).

{¶ 4} The CARES Act required the United States Secretary of Labor to provide PUA, PEUC, and FPUC benefits pursuant to agreements with states. *See* 15 U.S.C. 9021(f), 9023(a) and 9025(a). The provisions governing PEUC and FPUC benefits contained identical language concerning a state's discretion to enter into and end any agreement for benefits: "Any State which desires to do so may enter into and participate in an agreement under this section with the Secretary of Labor * * *. Any State which is a party to an agreement under this section may, upon providing 30 days' written notice to the Secretary, terminate such agreement." 15 U.S.C. 9023(a) and 9025(a)(1).

{¶ 5} On March 28, 2020, Governor DeWine entered into an agreement with the Secretary of Labor authorizing a number of CARES Act unemployment benefits for Ohioans, including PUA, PEUC, and FPUC benefits. (Mar. 28, 2020 Agreement Between the State of Ohio and the Secretary of Labor, United States Department of Labor (hereinafter, "Agreement"), Ex. B. to July 22, 2021 Joint Stipulations of All Parties (hereinafter, "Joint Stipulations").)

{¶ 6} On May 13, 2021, the Governor announced that Ohio would terminate its participation in FPUC. (Joint Stipulations at ¶ 5.) In a letter sent to the United States Department of Labor on May 24, 2021, he stated that FPUC "will end with the week ending June 26, 2021," and gave the 30-day notice of intent to terminate participation required by the CARES Act. (Ex. A to Joint Stipulations.) He cited "positive trends" in the Ohio economy, including "a current low unemployment rate of 4.7 percent" and the increasing number of vaccinations in the state. *Id.* The Governor acknowledged that FPUC had "been a great help to Ohioans in need" and "a lifeline" that had "helped buy groceries and pay

rent." *Id.* However, in his estimation, "[t]he need for workers is apparent in many industries, including restaurants, retail and manufacturing." *Id.* The Governor also stated:

> It is clear that Ohio workers are no longer out of work because of the pandemic shutdown. The FPUC extra $300 a week in assistance is now discouraging some from returning to work. This assistance was always intended to be temporary. Now is the time to end it.

*Id.*

{¶ 7}   On July 16, 2021, appellants filed a complaint for mandamus, declaratory judgment, and injunctive relief with an accompanying motion for a temporary restraining order and a preliminary injunction in the trial court against appellees. In the complaint, Mr. Huff alleged that after his layoff from a call center in February 2021 "due to the pandemic," he was dependent upon "$339.00 in unemployment compensation plus $300.00 weekly in FPUC" that he received to support his family. (July 16, 2021 Compl. at ¶ 9.) Without these benefits, Mr. Huff alleged, he would "lose the ability to pay all of his living expenses including his housing, utilities, and food."[1] *Id.* at ¶ 10.

{¶ 8}   Ms. Bowling attested to unemployment from a layoff that had occurred in January 2020. *Id.* at Ex. 1, Bowling Aff. at ¶ 4. According to Ms. Bowling, she used the unemployment benefits she had received, including FPUC, to pay for "household expenses including rent, utilities and food," as well as for "medical expenses and necessary expenses for [her] service animal." (Bowling Aff. at ¶ 8.) Her FPUC benefit had terminated on June 26, 2021, and, as a result, Ms. Bowling stated that she "face[d] the immediate financial distress of being unable to pay for my on-going expenses such as rent, utilities, and food." *Id.* at ¶ 9-10.

{¶ 9}   Mr. Willis attested to similar circumstances. He had been laid off from his position as a landscaper in March 2020 "due to the Pandemic," used unemployment compensation and FPUC to pay for household expenses, utilities, and food, and faced the "immediate financial distress of being unable to pay for" those expenses after the termination of his FPUC benefits on June 26, 2021. (Compl. at Ex. 2, Willis Aff. at ¶ 4-10.)

{¶ 10}  The complaint alleged that, by terminating the agreement for FPUC benefits, the Governor and Director violated the mandate of R.C. 4141.43(I) that the Director both

---

[1] No affidavit from Mr. Huff was attached to the complaint, affidavits from the other plaintiffs were attached.

"cooperate with" the United States Department of Labor and "secure * * * all advantages available" under the federal unemployment statutes listed in the statute. (Compl. at ¶ 34.) In Count I of the complaint, they sought a declaratory judgment that the Governor and Director "must secure all possible federal pandemic unemployment benefits to Ohioans." *Id.* at ¶ 40. In Count II, appellants sought an injunction enjoining the termination of such benefits. *Id.* at ¶ 41-48. Count III sought a writ of mandamus "requiring the Defendants to take all actions necessary to immediately restore FPUC benefits as is required by R.C. 4141.43(I)." *Id.* at ¶ 57.

{¶ 11} Appellants also sought immediate relief by filing a motion under Civ.R. 65 for a temporary restraining order and a preliminary injunction. (July 16, 2021 Mot.) Appellants argued that they were substantially likely to succeed on the merits of their claim because the "explicit text" of R.C. 4141.43(I) required appellees to "secure all possible federal pandemic benefits available to unemployed Ohioans" under the federal unemployment statutes it listed, and being unable to "meet their basic living expenses" as a result of the termination of FPUC constituting irreparable harm. (July 16, 2021 Mot. at 3-4.) They also argued that injunctive relief would not impose due hardship on appellees because the funds in question "had already been appropriated by Congress" and were still available, and the CARES Act covered any cost to the state. (July 16, 2021 Mot. at 4.) They also argued that the public interest would be served by issuing the injunction because "over 300,000 Ohioans" were receiving FPUC, and the funds "provide[d] an additional $98 million boost to Ohio's economy." *Id.* at 5.

{¶ 12} Appellees responded with a motion to dismiss the declaratory judgment and mandamus claims, as well as a memorandum opposing the request for a temporary restraining order and preliminary injunction. They argued that R.C. 4141.43(I) "confers no entitlement to FPUC benefits whatsoever" because they did not "fall under any of the federal statutes" enumerated in the Ohio statute. (July 21, 2021 Joint Combined Mot. to Dismiss and Memo. in Opp. at 5-6.) Appellees also argued that the Governor "acted within his discretion to determine that the FPUC benefit was no longer needed in Ohio," citing 15 U.S.C. 9023(a), the provision of the CARES Act that allowed a state to terminate an agreement for benefits with 30-days notice. *Id.* at 7-8. Because the Governor acted within his discretion, appellees argued, appellants had no legal right to relief in mandamus. *Id.* at 10-11.

{¶ 13} Appellees also argued that appellants could not satisfy any of the four prongs required to obtain a preliminary injunction. Appellants' incorrect reading of R.C. 4141.43(I) showed that they were not likely to succeed on the merits of their claims, appellees argued, and the measurable "monetary nature" of FPUC benefits was not an appropriate subject for injunctive relief. (July 21, 2021 Joint Combined Mot. to Dismiss and Memo in Opp. at 13-14.) Appellees also claimed that granting the relief would harm them because an injunction would interfere with the executive's ability "to carry out its duly enacted plans," as well as harm the public interest in having the "economy strengthened" by thwarting the Governor's intention to end the "labor shortage" created by the ongoing dispersal of FPUC benefits.[2] *Id.* at 14-15.

{¶ 14} In appellants' reply to the motion to dismiss, they made the following points. First, they argued that the Ohio Constitution delegated "the authority to legislate matters concerning the welfare of employees," including unemployment compensation, exclusively to the Ohio General Assembly, not the Governor. (July 23, 2021 Reply at 5.) Second, appellants argued that the Ohio General Assembly expressly adopted a policy of requiring the executive to secure "all advantages available" under the federal unemployment statutes listed in R.C. 4141.43(I) when it enacted the provision, and FPUC benefits under the CARES Act fell under those statutes. *Id.* at 7-8. Appellants also cited recent court decisions in Maryland and Indiana interpreting similar statutory language requiring those state executives to accept all pandemic-related unemployment benefits provided by the CARES Act. *Id.* at 9-10. Third, they argued that appellees had "usurped the legislative power reserved by the General Assembly" by terminating the agreement for FPUC benefits, thereby "violat[ing] the principle of separation of powers." *Id.* at 11-13. Finally, appellants argued that the irreparable harm they would suffer could not be addressed by monetary damages that "will not pay for rent and food today" and "defeat the purpose of the unemployment compensation program." *Id.* at 15.

{¶ 15} The trial court denied appellants' motion for a temporary restraining order and a preliminary injunction on July 29, 2021. It cited the standard for granting a motion for a preliminary injunction, as stated in *P & G v. Stoneham*, 140 Ohio App.3d 260, 267 (1st Dist.2000):

---

[2] Appellees also asserted a defense based on the doctrine of laches that they have not raised in this appeal.

> [A] party requesting a preliminary injunction must show that (1) there is a substantial likelihood that the plaintiff will prevail on the merits, (2) the plaintiff will suffer irreparable injury if the injunction is not granted, (3) no third parties will be unjustifiably harmed if the injunction is granted, and (4) the public interest will be served by the injunction.

{¶ 16} The trial court disagreed with appellants' assessment of their likelihood of success of the merits of their claim based on its determination that R.C. 4141.43(I) did not apply to FPUC benefits under the CARES Act. (July 29, 2021 Decision at 5.) The trial court also rejected appellants' argument that the Governor acted outside the scope of his authority, noting that the General Assembly had taken no action to amend R.C. 4141.43(I) "to include the CARES Act" to prevent him from terminating its benefits. *Id.* at 7. However, the trial court did agree with appellants that the termination of FPUC benefits resulted in "a significant and irreparable injury," as "any delay in the issuance [of] FPUC benefits months or years down the road * * * does not pay for rent and food today." *Id.* at 8. "To argue otherwise is disingenuous." *Id.* The trial court's decision did not address the other two prongs of the preliminary injunction analysis, unjustifiable harm to third parties or any public interest served by the injunction, or the appellants' declaratory judgment or mandamus claims. *See id.*

{¶ 17} Appellants appealed and requested expedited consideration, which was granted. (Aug. 2, 2021 Notice of Appeal; Aug. 2, 2021 Mot. to Expedite Appeal.) In response, appellees filed a motion to dismiss the appeal for lack of jurisdiction on the grounds that the trial court's decision was not a final, appealable order. (Aug. 4, 2021 Appellees' Joint Combined Response to Appellants' Mot. for Expedited Appeal and Mot. to Dismiss Appeal for Lack of Jurisdiction (hereinafter, "Joint Combined Response").) Various third parties have also filed amicus briefs in support of appellants and appellees.[3]

## II. JURISDICTION

{¶ 18} Because appellees' motion tests this court's ability to hear this interlocutory appeal, "we begin by examining the question of the court's jurisdiction." *Jack Maxton*

---

[3] Amicus briefs have been filed by the Chamber of Commerce of the United States of America and the National Federation of Independent Business Small Business Legal Center, the Ohio Chamber of Commerce, the Ohio Business Roundtable, the Ohio Restaurant Association, the Ohio Grocers Association, the Ohio Trucking Association, Policy Matters Ohio, the American Sustainable Business Council, the National Employment Law Project, William E. Spriggs, the Economic Policy Institute, and Andrew Stettner.

*Chevrolet, Inc. v. Hanbali*, 10th Dist. No. 15AP-816, 2016-Ohio-1244, ¶ 5 (sustaining motion to dismiss for lack of a final appealable order, precluding consideration of the merits of the appeal). *See also Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 20 (1989) ("It is well-established that an order must be final before it can be reviewed by an appellate court. If an order is not final, then an appellate court has no jurisdiction.").

{¶ 19} Under Article IV, Section 3 of the Ohio Constitution, "[c]ourts of appeal shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders" from the courts of common pleas. "To qualify as a final order that invokes the jurisdiction of an appellate court, an order must satisfy one of the definitions set forth under R.C. 2505.02." *Bay Emm Vay Store, Inc. v. BMW Fin. Servs. NA, L.L.C.*, 10th Dist. No. 17AP-786, 2018-Ohio-2736, ¶ 6. R.C. 2505.02(B) sets forth seven definitions of final orders "that may be reviewed, affirmed, modified, or reversed" by a court of appeals. The fourth definition is the only one relevant to this proceeding and provides a two-part definition of a "provisional remedy." R.C. 2505.02(B)(4). It recognizes the following as a final, appealable order:

> An order that grants or denies a provisional remedy and to which both of the following apply:
>
> (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
>
> (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

*Id.*

{¶ 20} By definition, a "proceeding for a preliminary injunction" is a "provisional remedy." R.C. 2502.02(A)(3). The trial court's order denied the provisional remedy of a preliminary injunction and "determine[d] the action" with respect to it, thereby preventing a judgment in favor of the appellants. Appellees concede this point. (Joint Combined Response at 7.) We agree and hold that the first prong of R.C. 2502(B)(4) is satisfied.

{¶ 21} The second prong of R.C. 2505.02(B)(4) asks whether delaying the resolution of "all proceedings, issues, claims, and parties in the action" would still provide "a meaningful or effective remedy" to the appealing party. "This division of the final order

statute recognizes that, in spite of courts' interest in avoiding piecemeal litigation, occasions may arise in which a party seeking to appeal from an interlocutory order would have no adequate remedy from the effects of that order on appeal from final judgment." *State v. Muncie*, 91 Ohio St.3d 440, 451 (2001).

{¶ 22} Appellees argue that because "FPUC benefits are readily calculable," appellants would have an effective remedy in the form of money damages if they were to prevail at a trial on the merits. (Joint Combined Response at 9.) We agree with the general proposition cited to support the premise of appellees' argument: relief in the form of money damages does not constitute a "meaningful or effective remedy" under R.C. 2505.02(B)(4)(b). *See id.*, citing *Cleveland Clinic Found. v. Orange Technologies, L.L.C.*, 8th Dist. No. 100011, 2014-Ohio-211, ¶ 14 (stating that "[c]alculable monetary losses and losses incurred during the pendency of the case can be remedied by money damages at the conclusion of the case, so there is generally no right to an immediate appeal from the ruling on the preliminary injunction," and dismissing interlocutory appeal where pending claims remained unresolved). *See also Dimension Serv. Corp. v. First Colonial Ins. Co.*, 10th Dist. No. 14AP-368, 2014-Ohio-5108, ¶ 18 (holding that the "ability to seek money damages" was not affected by the denial of a motion for preliminary injunction). For the following reasons, however, we do not agree that money damages would constitute a meaningful or effective remedy for appellants' claims.

{¶ 23} First, "[n]ot every claim for monetary relief constitutes 'money damages.' " *Interim HealthCare of Columbus, Inc. v. State Dept. of Adm. Servs.*, 10th Dist. No. 07AP-747, 2008-Ohio-2286, ¶ 15. "Even when the relief sought consists of the state's ultimately paying money, a cause of action will sound in equity if 'money damages' is not the essence of the claim." *Id.*, citing *Ohio Academy of Nursing Homes v. Ohio Dept. of Job & Family Servs.*, 114 Ohio St.3d 14, 2007-Ohio-2620, ¶ 15. Thus, "[w]hen a party seeks funds to which a statute allegedly entitles it, rather than money in compensation for the losses that the party will suffer or has suffered by virtue of the withholding of those funds, the nature of the relief sought is specific relief, not relief in the form of monetary damages." *Ohio Hosp. Assn. v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 06AP-471, 2007-Ohio-1499, ¶ 29. *See also Ohio Hosp. Assn. v. Ohio Dept. of Human Servs.*, 62 Ohio St.3d 97, 104 (1991) (holding that an "order to reimburse Medicaid providers for the amounts unlawfully withheld is not an award of money damages, but equitable relief"), citing and quoting *Bowen v.*

*Massachusetts*, 487 U.S. 879, 893 (1988) ("The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.' "); *Henley Health Care v. State Bur. of Workers' Comp.*, 10th Dist. No. 94APE08-1216, 1995 Ohio App. LEXIS 715, *7 (Feb. 23, 1995) (applying *Ohio Hosp. Assn. v. Ohio Dept. of Human Servs.* and *Bowen* and observing that "occasionally a money award can be a specific remedy").

{¶ 24} Furthermore, a party's possible award of future monetary damages may not amount to a "meaningful or effective remedy" under R.C. 2505.02(B)(4)(b) where an injunction seeks access to a finite amount of government-appropriated funds. The nature of such relief was pivotal to the question of the Eight District Court of Appeals' jurisdiction under R.C. 2505.02 in *AIDS Taskforce of Greater Cleveland v. Ohio Dept. of Health*, 8th Dist. No. 106971, 2018-Ohio-2727, ¶ 7. In that case, a charity had applied to the Ohio Department of Health for funding pursuant to a federal grant but was denied. *Id.* After the state approved awards to other organizations, the charity was denied an injunction to prevent the dispersal of the funds and appealed. *Id.* The Eighth District held that R.C. 2502.02(B)(4)(b) was satisfied, reasoning that:

> If the AIDS Taskforce is prevented from immediately appealing the court's denial of its preliminary injunction, the Part B funds for which the Taskforce has applied and been denied will likely be distributed by the ODH to the appellee organizations before the trial court renders its final judgment. As such, the Part B funds will have been exhausted. Moreover, there is no evidence that the federal program will make additional funds available in the future. And even if the Taskforce ultimately prevails on its claim for declaratory judgment, such a declaration that the ODH was in error in denying the Taskforce the Part B funds lacks any meaning or effectiveness if the funds no longer exist.

*AIDS Taskforce of Greater Cleveland* at ¶ 17.

{¶ 25} Here, as well, the federal funds in question are only available for a limited amount of time. Any federal-state agreement dispersing FPUC "shall apply to weeks of unemployment * * * ending on or before September 6, 2021," and there is no indication that Congress will extend the availability period. 15 U.S.C. 9025(g). In a matter of weeks, FPUC funds will "no longer exist." *AIDS Taskforce of Greater Cleveland* at ¶ 17.

{¶ 26} And, as the Supreme Court of Ohio stated when interpreting R.C. 2505.02(B)(4)(b), the question of "whether [an] appeal after final judgment would afford a

meaningful or effective remedy" requires examining more than the relief sought: a court must "consider whether there is a harm such that appeal after final judgment would not 'rectify the damage.' " *In re D.H.*, 152 Ohio St.3d 310, 2018-Ohio-17, ¶ 18, quoting *Muncie*, at 451, quoting *Gibson-Myers & Assocs., Inc. v. Pearce*, 9th Dist. No. 19358, 1999 Ohio App. LEXIS 5010 (Oct. 27, 1999). "Put another way, 'the proverbial bell cannot be unrung.' " *Id.* In this case, there is harm beyond the expiration of the funds described. The Supreme Court has stated that the purpose of unemployment compensation "is to enable unfortunate employees, who become and remain *involuntarily* unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day." (Emphasis sic.) *Leach v. Republic Steel Corp.*, 176 Ohio St. 221, 223 (1964). *See also Williams v. Ohio Dept. of Job & Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, ¶ 22, quoting *Leach.* In addition, the United States Supreme Court has described the purpose of unemployment compensation under federal statutes by quoting at length the following statement from hearing testimony of a Secretary of Labor:

> I think that the importance of providing purchasing power for these people, even though temporary, is of very great significance in the beginning of a depression. I really believe that putting purchasing power in the form of unemployment-insurance benefits in the hands of the people at the moment when the depression begins and when the first groups begin to be laid off is bound to have a beneficial effect. Not only will you stabilize their purchases, but through stabilization of their purchases you will keep other industries from going downward, and immediately you spread work by that very device.

*California Dept. of Human Resources Dev. v. Java*, 402 U.S. 121, 132-33 (1971).

{¶ 27} In short, future monetary damages would not allow appellants "to subsist on a reasonably decent level" today or have any effect on appellants' immediate ability to pay for rent, utilities, or food. This harm could not be rectified by money damages at a later date, when the injury could not be undone. Appellants would not be afforded a meaningful or effective remedy by an appeal following final judgment, as R.C. 2505.02(B)(4)(b) requires.

{¶ 28} Because both prongs of R.C. 2505.02(B)(4) are satisfied, the trial court's decision constitutes a final, appealable order that we have jurisdiction to review. Accordingly, appellees' motion to dismiss this appeal is denied.

## III. ASSIGNMENT OF ERROR

{¶ 29} We turn to appellants' assignment of error, which states:

> The trial court erred in overruling Appellants' motions for temporary restraining order and preliminary injunction by failing to find that Appellants were likely to prevail on the merits of their claims.

## IV. STANDARD OF REVIEW

{¶ 30} Two standards of review apply to the issues raised in this appeal. An abuse of discretion standard applies to the trial court's ultimate ruling denying injunctive relief under Civ.R. 65. *Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.*, 73 Ohio St.3d 590, 591 (1995), paragraph three of the syllabus ("The issue whether to grant or deny an injunction is a matter solely within the discretion of the trial court and a reviewing court will not disturb the judgment of the trial court in the absence of a clear abuse of discretion."). An "unreasonable, arbitrary, or unconscionable" action by the trial court amounts to an abuse of discretion. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). To find an abuse of discretion, the appellate court must conclude that the trial court's ruling "lacks a 'sound reasoning process.' " *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

{¶ 31} In addition, the "question of statutory construction presents an issue of law that we determine de novo on appeal." *Ceccarelli v. Levin*, 127 Ohio St.3d 231, 2010-Ohio-5681, ¶ 8. *See also Akron Centre Plaza, Ltd. Liab. Co. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, ¶ 10 (on questions of statutory interpretation, the "review is not deferential, but de novo"). The "main objective" when interpreting a statute "is to determine and give effect to the legislative intent." *Turner v. Certainteed Corp.*, 155 Ohio St.3d 149, 2018-Ohio-3869, ¶ 11, citing *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees*, 72 Ohio St.3d 62, 65 (1995). In doing so, "[w]e owe no deference to the lower court's decision, nor are we limited to choosing between the different interpretations of the statute presented by the parties." *Id.*

## V. ANALYSIS

{¶ 32} Appellants support their contention that the trial court erred by denying their motion for injunctive relief with two arguments, each of which addresses the ruling that they were unlikely to succeed on the merits. We consider each in turn.

A. *Whether R.C. 4141.43(I) mandates that Ohio accept "all available" unemployment benefits offered under certain federal statutes*

{¶ 33} Appellants argue that R.C. 4141.43(I) requires the state to accept all unemployment benefits available under the federal statutes it lists. (Appellants' Brief at 9.) They believe that the trial court incorrectly interpreted R.C. 4141.43(I) to not cover CARES Act benefits, based on the observation that CARES Act benefits "are not specifically referenced" in it, and that the trial court was incorrect to state "that 'the FPUC benefits are wholly created and administered outside of the Social Security Act thereby abrogating any application of R.C. 4141.43(I).' " (Appellants' Brief at 10, quoting July 29, 2021 Decision at 5.) Appellants point to the legislative history of the statute as an indication of the General Assembly's intent "to ensure that the state and its citizens would secure the greatest access to benefits." *Id.* They also read R.C. 4141.43(I) through the lens of R.C. 4141.46, which requires a liberal construction of Ohio's unemployment compensation statutes. (Appellants' Brief at 15.) In addition, appellants cite to several recent opinions from other states with "similar legislative language" where courts have ruled that plaintiffs are likely to succeed on their claims for injunctive relief to restart benefits under the CARES Act.[4] (Appellants' Brief at 16.)

{¶ 34} In response, appellees assert that "R.C. 4141.43(I) does not compel Governor DeWine to continue the administration of FPUC benefits." (Appellees' Brief at 8.) Like the trial court, they point to the "plain, unambiguous language" of the statute that "does not incorporate CARES Act provisions." *Id.* at 9. Appellees argue that R.C. 4141.43(I) imposes no mandate on the executive that applies here because FPUC benefits are "funded by the general fund of the Treasury" and were "created and administered entirely *outside* of [the Federal-State Unemployment Tax Act of 1970] and the Social Security Act," two of the federal statutes enumerated under the Ohio statute. (Emphasis sic.) (Appellees' Brief at 11-12.)

---

[4] *D.A. v. Hogan,* Md. No. 24-C-21-002988, 2021 U.S. Dist. LEXIS 123410 (July 3, 2021); *T.L. v. Holcomb*, Ind. Case No. 49D11-2106-PL-020140 (July 22, 2021).

{¶ 35} In *State ex rel. National Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 152 Ohio St.3d 393, 2017-Ohio-8348, ¶ 14, the Supreme Court of Ohio provided the following guidance for statutory interpretation:

> When construing a statute, this court's paramount concern is legislative intent. *State ex rel. Musial v. City of N. Olmsted*, 106 Ohio St. 3d 459, 2005-Ohio-5521, 835 N.E.2d 1243, ¶ 23. "If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St. 3d 543, 545, 1996-Ohio-291, 660 N.E.2d 463 (1996). R.C. 1.42 instructs: "Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." Our role is to evaluate the statute as a whole and to interpret it in a manner that will give effect to every word and clause, avoiding a construction that will render a provision meaningless or inoperative. *State ex rel. Myers v. Bd. of Educ.*, 95 Ohio St. 367, 373, 116 N.E. 516 (1917).

{¶ 36} Our task is to interpret R.C. 4141.43, a provision of Ohio's Unemployment Compensation Act. In addition to the general principles of statutory interpretation stated above, the General Assembly has directed that "[s]ections 4141.01 to 4141.46, inclusive, of the Revised Code shall be liberally construed." *See, e.g., David A. Bennett, D.D.S., Ltd. v. Dir., Ohio Dept. of Job Family Servs.*, 10th Dist. No. 11AP-1029, 2012-Ohio-2327, ¶ 6 ("the unemployment compensation statutes must be liberally construed in favor of awarding benefits to the applicant").

{¶ 37} R.C. 4141.43 is titled "Cooperation with federal, state and other agencies," and its subsection (I) provides:

> The director shall cooperate with the United States department of labor to the fullest extent consistent with this chapter, and shall take such action, through the adoption of appropriate rules, regulations, and administrative methods and standards, as may be necessary to secure to this state and its citizens all advantages available under the provisions of the "Social Security Act" that relate to unemployment compensation, the "Federal Unemployment Tax Act," (1970) 84 Stat. 713, 26 U.S.C.A. 3301 to 3311, the "Wagner-Peyser Act," (1933) 48 Stat. 113, 29 U.S.C.A. 49, the "Federal-State Extended Unemployment Compensation Act of 1970," 84 Stat. 596, 26

U.S.C.A. 3306, and the "Workforce Innovation and Opportunity Act," 29 U.S.C.A. 3101 et seq.[5]

{¶ 38} We think it inarguable that R.C. 4141.43(I) expresses the General Assembly's command to the state, by enlisting the administrative efforts of the executive to procure "all available benefits" under the federal statutes listed. In *United Steelworkers of Am. v. Doyle*, 168 Ohio St. 324, 325-26 (1958), the Supreme Court of Ohio "emphasized" the following:

> [T]his court is not permitted to concern itself with the question whether supplemental unemployment benefits should be sanctioned by the law of this state. That, of course, is not a judicial problem but one of legislative policy for determination by the General Assembly or by constitutional amendment. And, as has been said repeatedly in matters of statutory construction, it is not a question as to what the Legislature intended to enact; rather it is a question of the meaning of that which the Legislature did enact.

{¶ 39} The "question of the meaning" of R.C. 4141.43(I) is also illuminated by comparing the original language of the provision with its ultimate form. Ohio's Unemployment Compensation Act was created during the 91st General Assembly of Ohio during 1935 through 1936. *See* H.B. No. 608, 116 Ohio Laws Part II, 286. The original version of R.C. 4141.43(I) stated that the unemployment "commission may cooperate" with other state and federal agencies "necessary for the proper administration of this act." The General Assembly saw fit to repeal the permissive language of the original provision in 1972, when it replaced the suggestion of cooperation with a mandate that then-existing "administrator shall cooperate with the United States Department of Labor to the fullest extent consistent with" the Unemployment Compensation Act. Am.Sub.S.B. No. 77, 134

---

[5] R.C. 4141.43 provides incorrect citations to the Federal-State Extended Unemployment Compensation Act of 1970 ("EUCA"): "84 Stat. 596" and "26 U.S.C.A. 3306." The Statutes at Large citation references a provision of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91-538, that appears to invert the page citation of EUCA, which is 84 Stat. 695. The reference to 26 U.S.C. 3306 may have resulted from the fact that the overall 1970 legislative enactment of which EUCA was a part, the Employment Security Amendments of 1970, amends 26 U.S.C. 3306 in its first section, Title I, Part A, while Title II contains the EUCA and is codified at 26 U.S.C. 3304 note. *Compare* 84 Stat. 695 *with* 84 Stat. 708. Nevertheless, it is undisputed that R.C. 4141.43 refers to EUCA, in spite of these errors. *See Brim v. Rice*, 20 Ohio App.2d 293, 295 (1st Dist.1969) ("correcting 'manifestly nonsensical' erroneous statutory reference" because "courts do have authority to correct [an] obvious typographical error" in order "to give effect to the obvious intent of the statute"). *See also Stanton v. Frankel Bros. Realty Co.*, 117 Ohio St. 345, 350 (1927) ("It is a well-settled rule that courts will not permit a statute to be defeated on account of a mistake or error, where the intention of the Legislature can be collected from the whole statute, or where one word has been erroneously used for another, and where the context affords means of correction."); *Delahoussaye v. Ohio State Racing Comm.*, 10th Dist. No. 03AP-954, 2004-Ohio-3388 (applying *Stanton*).

Ohio Laws 150. In addition, the Generally Assembly inserted the specific references to the five federal statutes and the direction "to secure to this state and its citizens all advantages available under" them. *Id.* The General Assembly has not seen fit to amend or alter the substantive language of R.C. 4141.43(I) since then, a period of nearly 50 years.

{¶ 40} However, as appellees state in their brief: "To the extent that the statute does more than mandate 'cooperation' by the ODJFS director to conform with federal unemployment law, it is triggered *only* when benefits are made available under one of the five federal statutes specifically enumerated in R.C. 4141.43(I)." (Emphasis sic.) (Appellees' Brief at 10.) Thus, the ultimate question is whether FPUC benefits are "available" under one of the federal laws stated in R.C. 4141.43. Unsurprisingly, the parties disagree on this issue.

{¶ 41} Citing 15 U.S.C. 9021(g)(1), appellants argue that "both the increased unemployment benefits and the costs associated with administering those benefits are paid through accounts established within the Unemployment Trust Fund, which itself was created by the Social Security Act." (Appellants' Brief at 12.) Citing the same provision, they claim that "[a]ll PUA benefits—including FPUC—and administrative costs are funded by 42 U.S.C. §§ 1104(a) and 1105(a)," which are provisions of the Social Security Act. (Appellants' Brief at 13.) And, they further argue, "all PEUC benefits, including FPUC, are funded by 42 U.S.C. §§ 1104(a) and 1105(a)," citing 15 U.S.C. 9025(d). (Appellants' Brief at 13.)

{¶ 42} Appellees counter that FPUC benefits are actually "funded by the general fund of the Treasury," not the provisions cited by appellants, and that appellants have therefore "improperly conflate[d] the FPUC provisions with the PUA and PEUC provisions." (Appellees' Brief at 11-12.)

{¶ 43} Appellees are correct insofar as appellants do not accurately describe the funding mechanisms set up by the CARES Act that govern PUA, PEUC, and FPUC benefits. 15 U.S.C. 9021 governs PUA. Its funding provision is set forth in 15 U.S.C. 9021(g)(1), which states: "Funds in the extended unemployment compensation account (as established by section 905(a) of the Social Security Act (42 U.S.C. 1105(a)) of the Unemployment Trust Fund (as established by section 904(a) of such Act (42 U.S.C. 1104(a)) shall be used to make payments to States pursuant to [agreements entered into with states under the previous subsection]." 15 U.S.C. 9025 governs PEUC benefits, and its funding provision contains nearly identical language: "Funds in the extended unemployment compensation account (as established by section 905(a) of the Social Security Act (42 U.S.C. 1105(a)) of the

Unemployment Trust Fund (as established by section 904(a) of such Act (42 U.S.C. 1104(a)) shall be used for the making of payments to States having agreements entered into under this section."

{¶ 44} The FPUC provision, in contrast, states only that "[t]here are appropriated from the general fund of the Treasury, without fiscal year limitation, such sums as may be necessary for purposes of this subsection." 15 U.S.C. 9023(d)(3). The Secretary of Labor certifies the amount of FPUC "to the Secretary of the Treasury for payment to each State" directly. 15 U.S.C. 9023(d)(2). Thus, unlike the PUA and PEUC provisions, the appropriated funds are not routed through the unemployment compensation account of the Unemployment Trust Fund. We do note that all three types of benefits, regardless of how they are routed, originate from the general fund of the United States Treasury. 15 U.S.C. 9023(d)(3); 15 U.S.C. 9021(g)(2)(B) (for PUA funds, "the Secretary of the Treasury shall transfer from the general fund of the Treasury * * * to the employment security administration account"); 15 U.S.C. 9021(d)(1)(B) (for PEUC funds, "the Secretary of the Treasury shall transfer from the general fund of the Treasury * * * to the extended unemployment compensation account"). Appellees' position is that this distinction that "the PUA and PEUC may use Social Security Act funds and accounts, [while] the FPUC benefit does not," is a "critical and controlling" distinction demonstrating that the FPUC funds are not one of the "advantages available" under one of the federal statutes enumerated in R.C. 4141.43. (Appellees' Brief at 13, fn. 1.)[6]

{¶ 45} However, this purported distinction recedes into inconsequentiality when one considers the CARES Act definitions of FPUC and applies them under R.C. 4141.43. The FPUC definitions state:

> For purposes of this section—
>
> (1) the terms "compensation", "regular compensation", "benefit year", "State", "State agency", "State law", and "week" have the respective meanings given such terms under section 205 of the Federal-State Extended Unemployment Compensation Act of 1970 (26 U.S.C. 3304 note); and

---

[6] Appellees claim in a footnote that they "are not asserting that use of the extended unemployment compensation account and/or the Unemployment Trust Fund by these CARES Act provisions creates any entitlement to continuation of those benefits" because they did not terminate PUA and PEUC benefits. But they cannot simultaneously argue (1) PUA and PEUC fall under the mandate of R.C. 4141.43(I) but FPUC does not, and (2) PUA, PEUC, and FPUC do not fall under the mandate of R.C. 4141.43(I).

(2) any reference to unemployment benefits described in this paragraph shall be considered to refer to—

(A) *extended compensation (as defined by section 205 of the Federal-State Extended Unemployment Compensation Act of 1970)*;

(B) regular compensation (as defined by section 85(b) of the Internal Revenue Code of 1986) provided under any program administered by a State under an agreement with the Secretary;

(C) *pandemic unemployment assistance under section 2102 [15 U.S.C. 9021];*

(D) *pandemic emergency unemployment compensation under section 2107 [15 U.S.C. 9025]*; and

(E) short-time compensation under a short-time compensation program (as defined in section 3306(v) of the Internal Revenue Code of 1986 [26 U.S.C. 3306(v)]).

(Emphasis added.) 15 U.S.C. 9023(i).

{¶ 46} According to subsection (2)(A) above, one definition of FPUC is "extended compensation" as defined under the Federal-State Extended Unemployment Compensation Act of 1970 ("EUCA"), codified at 26 U.S.C. 3004 note. EUCA defines "extended compensation" as "compensation * * * payable for weeks of unemployment beginning in an extended benefit period to an individual under *those provisions of the State law which satisfy the requirements of this title* with respect to the payment of extended compensation." (Emphasis added.) 26 U.S.C. 3304 note, Section 205. Thus, FPUC is defined as unemployment compensation administered under state law that satisfies the requirements of EUCA. Recall that EUCA is one of the federal statutes enumerated in R.C. 4141.43(I).

{¶ 47} FPUC is also *defined as* "pandemic unemployment assistance under" 15 U.S.C. 9021, or PUA. 15 U.S.C. 9023(i)(2)(C). In addition, FPUC is *defined as* "pandemic emergency unemployment compensation under" 15 U.S.C. 9025, or PEUC. 15 U.S.C. 9023(i)(2)(D). Based on these equivalencies, there is no categorial distinction between FPUC and PUA, or FPUC an PEUC that Congress wanted to have recognized. As appellees

describe, both PUA and PEUC are administered through provisions of the Social Security Act, another of the federal statutes referenced in R.C. 4141.43(I). (Appellees' Brief at 12-13.) We conclude that FPUC is one of the "available advantages" described in R.C. 4141.43(I) that the General Assembly requires appellees "secure" to the citizens of the State of Ohio.

B. *Whether the Governor violated the principle of separation of powers by terminating the Agreement for FPUC benefits*

{¶ 48} In the second argument in support of their appeal, appellants argue that the Governor "usurped the legislative power reserved to the General Assembly" under the Ohio Constitution and R.C. 4141.45, thereby violating the principle of separation of powers. (Appellants' Brief at 19, 20-25.) In addition, they argue that the Governor "is bound by R.C. 4141.43(I)," and that the trial court erroneously limited the mandate of that statute to the Director. (Appellants' Brief at 25-28.)

{¶ 49} In response, appellees argue that the Governor acted within his authority under the Ohio Constitution, which "gives the Governor broad power to enter into agreements with other jurisdictions, including federal agencies." (Appellees' Brief at 27-28.)

{¶ 50} The doctrine of separation of powers "is implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government." *S. Euclid v. Jemison*, 28 Ohio St.3d 157, 159 (1986), citing *State v. Harmon*, 31 Ohio St. 250 (1877). " 'The essential principle underlying the policy of the division of powers of government into three departments is that powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments, and further that none of them ought to possess directly or indirectly an overruling influence over the others.' " *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 134 (2000), quoting *State ex rel. Bryant v. Akron Metro. Park Dist.*, 120 Ohio St. 464, 473 (1929). "The Ohio Constitution is the paramount law of this state, and we recognize that the framers chose its language carefully and deliberately, employed words in their natural sense, and intended what they said." *Cleveland v. State*, 157 Ohio St.3d 330, 2019-Ohio-3820, ¶ 16, citing *Gibbons v. Ogden*, 22 U.S. 1, 188 (1824). Thus, our discussion must begin with the text of the constitutional provisions that grant the powers in question.

{¶ 51} Under Ohio Constitution, Article III, Section 5, "[t]he supreme executive power of this state shall be vested in the governor." Ohio Constitution, Article III, Section 6, provides that the governor "shall see that the laws are faithfully executed." Separately, "[t]he legislative power of the state shall be vested in a general assembly." Ohio Constitution, Article II, Section 1. The Ohio Constitution further elaborates on the legislative power of the General Assembly concerning the "[w]elfare of employe[e]s," in Article II, Section 34, which states: "Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employe[e]s; and no other provision of the constitution shall impair or limit this power."

{¶ 52} It is instructive that, in addition to the division of power between the executive and legislative branches, the Ohio Constitution also commands that "no other provision of the constitution shall impair or limit [the] power" of the General Assembly to "provid[e] for the comfort, health, safety and general welfare" of employees in this state. This command applies with force to the policy mandate of R.C. 4141.43(I) to secure "all available advantages" under the applicable federal unemployment laws. Ohio Constitution, Article II, Section 34. R.C. 4141.43(I) falls within the General Assembly's power to provide for the welfare of employees of this state, and thus the Governor cannot "impair or limit" the requirement to obtain those advantages through the exercise of his executive power. Ohio Constitution, Article II, Section 34.

{¶ 53} "A fundamental principle of the constitutional separation of powers among the three branches of government is that the legislative branch is 'the ultimate arbiter of public policy.' " *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, ¶ 21, quoting *State ex rel. Cincinnati Enquirer v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, ¶ 21. However, the Governor's own words demonstrate that he assumed the mantle of "ultimate arbiter" on the decision of whether to continue FPUC benefits. *Id.* He justified their termination with his assessment that "[t]he shortage of workers is having a real impact on our supply chain and the cost and availability of goods"; his belief that "Ohio workers are no longer out of work because of the pandemic shutdowns"; and his personal resolution of a complex and controversial economic issue: "The FPUC extra $300 a week in assistance is now discouraging some from returning to work." (Joint Stipulation, Ex. A.) Thus, he concluded, "[n]ow is the time to end it." *Id.* In doing so, he encroached upon the legislative

power exclusively reserved to the General Assembly under the Constitution to decide matters of public policy. The Governor's termination of FPUC benefits was in derogation of that body's mandate under R.C. 4141.43(I) to secure "all available benefits" for the citizens of this state.

{¶ 54} Appellees respond by citing *Ohio Roundtable v. Taft*, 112 Ohio Misc.2d 49, 2002-Ohio-3669, in which the Franklin County Court of Common Pleas ruled that "the Governor's power to decide whether Ohio will enter into an agreement with other states is grounded in the Constitution," and that such power "exists independently" of a statute governing interstate lottery agreements that had not yet taken effect. There is no question that the executive has the authority to enter into an agreement with another sovereign under the express grant of such power in the Constitution. *See* Ohio Constitution, Article III, Section 5. But this case, in contrast, involves an executive action that stood in direct contrast to a specific policy mandate in a long-standing statute, R.C. 4141.43, as well as a violation of the constitutionally delineated check on the executive's ability to "impair or limit" that policy. Ohio Constitution, Article II, Section 34.

{¶ 55} Based on our de novo review of the applicable statutory and constitutional texts, we conclude that the trial court abused its discretion when it determined that appellants were not likely to succeed on the merits of the claim and denied the preliminary injunction. The assignment of error is sustained.

### C. *Whether appellants are entitled to judgment as a matter of law under Ohio Appellate Rule 12(B)*

{¶ 56} As a remedy on appeal, appellants request that we "reverse the trial court's judgment and, pursuant to App.R. 12(B), enter the judgment which Appellants requested below." (Appellants' Brief at 29.) However, in addition to injunctive relief, the "judgment requested below," as set forth in the prayer for relief of appellants' complaint, encompasses their declaratory judgment and mandamus claims, as well as attorneys' fees and costs. We are, at most, able to consider the injunctive relief requested, in accordance with the limited jurisdiction conferred under R.C. 2505.02 due to the interlocutory status of this appeal. *See supra* Part II. In other words, the most that this court could do is reverse and remand for entry of the preliminary injunction. *See Charles Penzone, Inc. v. Koster*, 10th Dist. No. 07AP-569, 2008-Ohio-327 (reversing denial of request for preliminary injunction, holding

that plaintiff had satisfied factors necessary for injunction, and remanding cause to the trial court).

{¶ 57} However, appellants have not demonstrated that they are entitled to such relief. App.R. 12(B) states, in relevant part:

> When the court of appeals determines that the trial court committed error prejudicial to the appellant and that the appellant is entitled to have judgment or final order rendered in his favor as a matter of law, the court of appeals shall reverse the judgment or final order of the trial court and render the judgment or final order that the trial court should have rendered, or remand the cause to the court with instructions to render such judgment or final order. In all other cases where the court of appeals determines that the judgment or final order of the trial court should be modified as a matter of law it shall enter its judgment accordingly.

{¶ 58} Under this standard, appellants need to have demonstrated that they have satisfied all requirements for a preliminary injunction, thereby showing that they are "entitled" to it before this court could order the trial court to enter the order "as a matter of law." For a court to grant a preliminary injunction, the party seeking the injunction must show "(1) there is a substantial likelihood that the plaintiff will prevail on the merits; (2) the plaintiff will suffer irreparable injury if the injunction is not granted; (3) no third parties will be unjustifiably harmed if the injunction is granted; and (4) the public interest will be served by the injunction." *Ohio Democratic Party v. LaRose*, 10th Dist. No. 20AP-421, 2020-Ohio-4664, ¶ 32. *See also Hydrofarm, Inc. v. Orendorff*, 180 Ohio App.3d 339, 2008-Ohio-6819, ¶ 18 (10th Dist.) (stating four factors). And, "in determining whether to grant injunctive relief, * * * the factors 'must be balanced,' and * * * 'no one factor is dispositive.' " *Escape Ents., Ltd. v. Gosh Ents., Inc.*, 10th Dist. No. 04AP-834, 2005-Ohio-2637, ¶ 48, quoting *Cleveland v. Cleveland Elec. Illum. Co.*, 115 Ohio App.3d 1, 14 (8th Dist.1996).

{¶ 59} Typically, "the likelihood of success and irreparable harm factors predominate." *Youngstown City School Dist. Bd. of Edn. v. State*, 10th Dist. No. 15AP-941, 2017-Ohio-555, ¶ 68 (Brunner, J., dissenting). In this case, the trial court settled the issue of irreparable injury, which was not appealed, and on remand, this opinion's resolution of the issue of appellants' likelihood of success on the merits will be the law of the case. *See Giancola v. Azem*, 153 Ohio St.3d 594, 2018-Ohio-1694, ¶ 1 ("The law-of-the-case doctrine

provides that legal questions resolved by a reviewing court in a prior appeal remain the law of that case for any subsequent proceedings at both the trial and appellate levels."). Unlike *Ohio Democratic Party* and *Hydrofarm, Inc.,* in which the trial court granted the injunctive relief, the trial court here denied relief.

{¶ 60} In doing so, the trial court did not address two of the four factors relevant to the preliminary injunction analysis: unjustifiable harm to third parties or any public interest served by the injunction. The trial court may have ignored those factors in the interests of judicial economy, because in finding no likelihood of success on the merits, its ruling precluded relief. But the analysis remains incomplete. *See Jack Guttman, Inc. v. Kopykake Ents.*, 302 F.3d 1352, 1362-63 (Fed.Cir.2002) (where the trial court denied the preliminary injunction motion and "did not complete its analysis of the four factors [required] to show entitlement to a preliminary injunction," the analysis "still rests within the discretion of the trial court. Thus, the appropriate remedy is not to reverse with instructions to enter the injunction," but to remand for the trial court to complete the analysis). We are also mindful that a "court should exercise great caution regarding the granting of an injunction which would interfere with another branch of government," and therefore believe that a complete analysis of the four factors must occur before the issuance of any injunctive relief. *Toledo v. State*, 154 Ohio St.3d 41, 2018-Ohio-2358, ¶ 16, quoting *Lake Hosp. Sys. v. Ohio Ins. Guar. Assn.*, 69 Ohio St.3d 521, 526 (1994). For these reasons, we decline to order the trial court to enter the injunction without completing the required analysis, and therefore remand this case to the trial court so that it may consider the previously unaddressed factors relevant to appellants' request for a preliminary injunction.

## VI. CONCLUSION

{¶ 61} Appellants' sole assignment of error is sustained and appellees' motion to dismiss is denied. The final order of the Franklin County Court of Common Pleas is reversed and the case is remanded for further proceedings in accordance with this decision.

*Motion to dismiss denied;*
*Judgment reversed and case remanded.*

JAMISON, J., concurs.
SADLER, J., dissents.

SADLER, J., dissenting.

{¶ 62} Because I would grant appellees' motion to dismiss this interlocutory appeal for lack of jurisdiction, I respectfully dissent.

{¶ 63} As discussed by the majority, to constitute a final, appealable order, the order must be one in which "[t]he appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action."  R.C. 2505.02(B)(4)(b).  In the case sub judice, appellants' complaint was filed 64 days after the Governor announced that Ohio would terminate its participation in FPUC effective June 26, 2021, and 20 days after the FPUC benefits terminated.  While appellants' July 16, 2021 complaint seeks both mandamus and declaratory relief, Count II of the complaint seeks an injunction "[e]njoining the State from terminating federally-funded unemployment benefits" and contains in its prayer for relief a request to "[e]njoin [appellees] from withdrawing the State of Ohio from unemployment benefits offered through the CARES Act."  (Compl. at 7, 9.) Because the enhanced benefits have already terminated, the heart of appellants' action now lies within the asserted claims of mandamus and declaratory judgment that have not yet been addressed and remain pending in the trial court.

{¶ 64} Given the issue currently before us and the unique factual circumstances presented herein, including the current posture of the case and the fact that the FPUC benefits were terminated prior to the filing of the complaint, I cannot conclude that appellants have no adequate remedy from the effect of the trial court's order on appeal from final judgment on the remaining claims.  Thus, in my view the majority's discussion of the merits of this action is premature.

{¶ 65} Accordingly, I would grant appellees' motion to dismiss this interlocutory appeal for lack of jurisdiction and refrain at this time from passing judgment on the merits of appellants' asserted assignment of error.

_____