[Cite as *State ex rel. Thomas Jones v. Ohio [Adult] Parole Authority*, 2024-Ohio-3251.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Thomas Jones, | : | |
| Relator, | : | No. 22AP-74 |
| v. | : | (REGULAR CALENDAR) |
| Ohio [Adult] Parole Authority, | : | |
| Respondent. | : | |

D E C I S I O N

Rendered on August 27, 2024

**On brief:** *Thomas Jones*, pro se.

**On brief:** *Dave Yost*, Attorney General, and *George Horvath*, for respondent.

IN MANDAMUS

JAMISON, J.

{¶ 1} Relator, Thomas Jones, seeks a writ of mandamus ordering respondent, Ohio Adult Parole Authority ("parole board"), to immediately afford him a meaningful opportunity to demonstrate maturity and rehabilitation to obtain release pursuant to R.C. 2967.132.

{¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals.

{¶ 3} The magistrate issued the appended decision, including findings of fact and conclusions of law, finding relator has established that he has a clear legal right to a parole hearing within a reasonable time after he became eligible pursuant to R.C. 2967.132, that respondent was under a clear legal duty to provide such relief pursuant to R.C. 2967.132, and that relator is absent an adequate remedy at law. The magistrate recommended a

limited writ of mandamus ordering the parole board to hold a hearing, pursuant to R.C. 2967.132, with all deliberate speed and in compliance with the requirements provided under the statute and other applicable law.

{¶ 4} On March 5, 2024, relator filed a document titled "Respondent's Response to Magistrate's Decision, Filed February 20, 2024." (Mar. 5, 2024 Resp. at 1.) This document cannot be considered an objection to the magistrate's decision as it raises no error of law or legal argument. Rather, the document lays out a timeline for the parole board to hold a hearing for relator and details what steps are necessary for relator's hearing to be held "with all deliberate speed." (Resp. at 2.) Relator has not filed objections to the magistrate's decision.

{¶ 5} On April 10, 2024, relator filed a "Verified Motion for Preliminary Injunction" requesting the court enter a preliminary injunction against respondent arguing a number of violations by the parole board. Relator previously filed a motion for preliminary injunction on June 7, 2022. The magistrate appointed to the matter denied that motion by order filed June 8, 2022. Relator again filed a motion for preliminary injunction on July 26, 2022. The magistrate appointed to the matter denied that motion by order filed July 27, 2022. Relator has filed the same motion on at least three occasions.

{¶ 6} " '[A] party requesting a preliminary injunction must show that (1) there is a substantial likelihood that the plaintiff will prevail on the merits, (2) the plaintiff will suffer irreparable injury if the injunction is not granted, (3) no third parties will be unjustifiably harmed if the injunction is granted, and (4) the public interest will be served by the injunction.' " *State ex. Rel. Bowling v. DeWine*, 10th Dist. No. 21AP-380, 2021-Ohio-2902, ¶ 15, quoting *Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267 (1st Dist.2000). The court finds this motion to be moot as the limited writ of mandamus will issue ordering the parole board to hold a hearing. Relator will not suffer irreparable injury if the injunction is not granted as he has a remedy in the current decision. Further, relator's motion has been denied on two prior occasions and is therefore, res judicata.

{¶ 7} Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law. In accordance with the magistrate's decision, we grant relator a limited writ of mandamus ordering the parole board to hold a hearing, pursuant to R.C. 2967.132,

with all deliberate speed and in compliance with the requirements provided under the statute and other applicable law. Verified motion for preliminary injunction is moot.

*Limited writ of mandamus granted*;
*verified motion for preliminary injunction is moot.*

MENTEL, P.J., concurs,
LUPER SCHUSTER, J., dissents.

LUPER SCHUSTER, J., dissenting.

{¶ 8} Because I would not adopt the magistrate's conclusions of law, I dissent. Even though no party has objected to the magistrate's decision, I find an error of law on its face. *See* Civ.R. 53(D)(4)(c) ("If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision."). The statute at issue in this matter, R.C. 2967.132, which addresses "[e]ligibility for parole for offender under eighteen when offense committed," was enacted by 2020 Sub.S.B. No. 256 ("S.B. 256") and became effective April 12, 2021. Relator asserts he is currently entitled to a parole hearing pursuant to this statute. The magistrate concludes relator has demonstrated a clear legal right to a parole hearing within a reasonable time after he became parole eligible under that statute, which was its effective date. I disagree.

{¶ 9} R.C. 2967.132(E)(1) provides that "[o]nce a prisoner is eligible for parole pursuant to division (C) or (D) of this section, the parole board, within a reasonable time after the prisoner becomes eligible, shall conduct a hearing to consider the prisoner's release on parole under parole supervision." In my view, an inmate does not "become[] eligible" for parole, pursuant to R.C. 2967.132(C) or (D), when that inmate was already eligible for parole on the effective date of that statute. Before the effective date of R.C. 2967.132, relator was eligible for parole, and he had his first hearing before the parole board in October 2011. He had his second hearing before the parole board in September 2019. Because relator was eligible for parole before the effective date of R.C. 2967.132, he did not "become[] eligible" for parole pursuant to R.C. 2967.132(C) or (D). As such, relator was not entitled, under R.C. 2967.132, to a parole hearing within a reasonable time after the effective date of this statute. Consequently, I would deny relator's request for a writ of mandamus.

{¶ 10} Accordingly, I respectfully dissent.

_____

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Thomas Jones, | : | |
| Relator, | : | |
| v. | : | No. 22AP-74 |
| Ohio [Adult] Parole Authority, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

MAGISTRATE'S DECISION

Rendered on February 20, 2024

*Thomas Jones*, pro se.

*Dave Yost*, Attorney General, and *George Horvath*, for respondent.

IN MANDAMUS

{¶ 11} Relator Thomas Jones seeks a writ of mandamus ordering respondent Ohio Adult Parole Authority ("OAPA" or "respondent") to immediately afford him a meaningful opportunity to demonstrate maturity and rehabilitation to obtain release pursuant to R.C. 2967.132.

## I. Findings of Fact

{¶ 12} 1. Relator is an inmate incarcerated at the Richland Correctional Institution in Mansfield, Ohio.

{¶ 13} 2. The Ohio Parole Board ("parole board") is an administrative section of OAPA, which itself is an administrative section of the Division of Parole and Community

Services, which in turn is a division of the Ohio Department of Rehabilitation and Correction ("ODRC"). *See* R.C. 5149.02.

{¶ 14} 3. In 1994, relator, who was 15 years of age at that time, shot and killed two individuals. The Cuyahoga County Juvenile Court conducted an amenability hearing and transferred relator to the jurisdiction of the General Division of the Cuyahoga County Common Pleas Court. In 1995, after relator was indicted on two counts of aggravated murder, he entered a plea of guilty to one count of aggravated murder and one count of murder, with a firearm specification. The common pleas court accepted relator's plea and sentenced him to life imprisonment with eligibility for parole after 20 years on the count of aggravated murder to be served concurrently with 15 years to life imprisonment on the count of murder with 3 years for the gun specification. *See State v. Jones*, 8th Dist. No. 75574, 1999 Ohio App. LEXIS 6400 (Dec. 30, 1999).

{¶ 15} 4. Relator's first parole hearing before the parole board occurred on October 14, 2011. In its decision, the parole board noted that the mandatory factors in Ohio Adm.Code 5120:1-1-07 were considered. The parole board provided the following rationale in support of its decision to deny parole:

> The Board has determined that the inmate is not suitable for release at this time. The inmate has completed some of his recommended programs, was 15 at the time of the offense and has good family support, however, two victims killed at the hands of the inmate and some negative institutional conduct -release would not further the interest of justice.

(Respondent's Exhibit A1 at 1.) The parole board indicated the following factors in Ohio Adm.Code 5120:1-1-07 supported continued incarceration: (1) "There is substantial reason to believe that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety, or that due to the serious nature of the crime, the release of the inmate would not further the interest of justice or be consistent with the welfare and security of society," and (2) "There is substantial reason to believe that due to serious infractions of division level 5120-9-06 of the Administrative Code, the release of the inmate would not act as a deterrent to the inmate or to other institutionalized inmates from violating institutional rules." (Respondent's Exhibit A1 at

1.) By majority vote, the parole board scheduled relator's next parole hearing to occur in 96 months on or about October 1, 2019.

{¶ 16} 5. Relator's second parole hearing occurred on September 24, 2019. In its decision, the parole board again noted that the mandatory factors in Ohio Adm.Code 5120:1-1-07 were considered. The parole board provided the following rationale in support of its decision to deny parole:

> Inmate has served approximately 25 years for the double homicide in which he shot two males in the back of the head. The inmate minimizes his behaviors regarding the offenses but does show some level of remorse towards the victims. He has failed to maintain appropriate institutional conduct. After considering relevant factors and taking into consideration the senseless killing of two individuals, the Board does not consider the inmate suitable for release at this time.

(Respondent's Exhibit A2 at 1.) In addition to the same factors cited in support of the parole board's prior decision denying parole, the parole board found the following additional factor supported continued incarceration: "There is substantial reason to believe that the inmate will engage in further criminal conduct, or that the inmate will not conform to such conditions of release as may be established under [Ohio Adm. Code] 5120:1-1-12." (Respondent's Exhibit A2 at 1.) By majority vote, the parole board scheduled relator's next parole hearing to occur in 59 months on or about August 1, 2024.

{¶ 17} 6. Relator commenced this mandamus action by filing his complaint on January 28, 2022. In his complaint, relator stated that he seeks a writ of mandamus "compelling [respondent] to immediately afford a meaningful opportunity to demonstrate maturity and rehabilitation to obtain release [p]ursuant to R.C. 2967.132." (Emphasis removed.) (Compl. at 2.)

{¶ 18} 7. Respondent filed a motion to dismiss on April 12, 2022.

{¶ 19} 8. Relator filed a motion for summary judgment on May 3, 2022.

{¶ 20} 9. Respondent filed a cross-motion for summary judgment and opposition to relator's motion to summary judgment on May 23, 2022.

{¶ 21} 10. Relator filed a motion for preliminary injunction on June 7, 2022. The magistrate previously appointed to this matter denied that motion by order filed June 8, 2022. On June 22, 2022, relator filed a "motion appealing magistrate denial of preliminary

injunction." This court construed relator's June 22, 2022 filing as a motion to set aside and denied such motion in a July 11, 2022 journal entry.

**{¶ 22}** 11. Relator again filed a motion for preliminary injunction on July 26, 2022. The magistrate previously appointed to this matter denied that motion by order filed July 27, 2022. Relator filed a motion to set aside the July 27, 2022 order on August 4, 2022. This court denied relator's August 4, 2022 motion in a November 3, 2022 journal entry.

**{¶ 23}** 12. On November 3, 2022, relator filed a motion for judgment on the pleadings.

**{¶ 24}** 13. On November 4, 2022, a magistrate's order was issued denying respondent's motion to dismiss, relator's May 3, 2022 motion for summary judgment, respondent's May 23, 2022 cross-motion for summary judgment, and relator's November 3, 2022 motion for judgment on the pleadings.

**{¶ 25}** 14. On January 4, 2023, relator filed a presentation of evidence.

**{¶ 26}** 15. On February 3, 2023, respondent filed its presentation of evidence. Attached to respondent's presentation of evidence was the affidavit of Jennifer Clemans, quality assurance analyst to the parole board. Clemans stated in her affidavit that she was providing an explanation of how the parole board was applying R.C. 2967.132 to relator's parole proceedings.

**{¶ 27}** 16. Following submission of evidence and briefing, the matter was submitted on September 26, 2023.

## II. Discussion and Conclusions of Law

**{¶ 28}** Relator seeks a writ of mandamus compelling respondent to immediately afford him a meaningful opportunity to demonstrate maturity and rehabilitation in order to secure his release from imprisonment pursuant to R.C. 2967.132.

## A. Mandamus

**{¶ 29}** In order for a court to issue a writ of mandamus, a relator must establish (1) the relator has a clear legal right to the requested relief, (2) the respondent is under a clear legal duty to provide the relief, and (3) the relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28, 29 (1983), citing *State ex rel. Harris v. Rhodes*, 54 Ohio St.2d 41, 42 (1978). The relator bears

the burden of establishing entitlement to a writ of mandamus by clear and convincing evidence. *State ex rel. Ware v. Crawford*, 167 Ohio St.3d 453, 2022-Ohio-295, ¶ 14. "Clear and convincing evidence is 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, ¶ 18, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**B. Parole Eligibility Under R.C. 2967.132**

{¶ 30} R.C. 2967.132, which was enacted by 2020 Sub.S.B. No. 256 ("S.B. 256") and became effective on April 12, 2021, revises parole eligibility requirements for prisoners "serving a prison sentence for one or more offenses committed when the prisoner was under eighteen years of age." R.C. 2967.132(B). The parole eligibility provisions in R.C. 2967.132 "apply to determine the parole eligibility of all prisoners described in this section who committed an offense prior to, on, or after April 12, 2021, regardless of when the prisoner committed or was sentenced for the offense." R.C. 2967.132(I)(1).[1] Furthermore, R.C. 2967.132(B) provides that "[r]egardless of whether the prisoner's stated prison term includes mandatory time," the statute "shall apply automatically and cannot be limited by the sentencing court."

{¶ 31} Provisions related to the determination of eligibility for parole under R.C. 2967.132 are found in two different subsections. Determining which subsection applies requires analysis of the type of offense committed by the prisoner. R.C. 2967.132(D) applies to prisoners serving a sentence for an aggravated homicide offense, as that term is defined under the statute, and provides that such prisoners are "not eligible for parole review other than in accordance with the sentence imposed for the offense." The term "aggravated homicide offense" for purposes of the statute is defined as "any of the following

---

[1] For purposes of R.C. 2967.132, "a prisoner is 'serving' a prison sentence for an offense if on or after the effective date of this section April 12, 2021, the prisoner is serving a prison sentence for that offense, regardless of when the sentence was imposed or the offense was committed." R.C. 2967.132(I)(1). Additionally, S.B. 256 provided that the "enactment of section 2967.132 * * * appl[ied] to all offenses, offenders, and prisoners described in those provisions, regardless of when the offender or prisoner committed, or was sentenced for, the offense." S.B. 256, Section 3(B).

that involved the purposeful killing of three or more persons, when the offender is the principal offender in each offense: (a) Aggravated murder; (b) Any other offense or combination of offenses that involved the purposeful killing of three or more persons." R.C. 2967.132(A)(1).

{¶ 32} For those individuals not serving a sentence for an aggravated homicide offense, R.C. 2967.132(C) controls, providing as follows:

> Notwithstanding any provision of the Revised Code to the contrary, and regardless of when the offense or offenses were committed and when the sentence was imposed, a prisoner who is serving a prison sentence for an offense other than an aggravated homicide offense and who was under eighteen years of age at the time of the offense, or who is serving consecutive prison sentences for multiple offenses none of which is an aggravated homicide offense and who was under eighteen years of age at the time of the offenses, is eligible for parole as follows:

> (1) Except as provided in division (C)(2) or (3) of this section, the prisoner is eligible for parole after serving eighteen years in prison.

> (2) Except as provided in division (C)(3) or (4) of this section, if the prisoner is serving a sentence for one or more homicide offenses, none of which are an aggravated homicide offense, the prisoner is eligible for parole after serving twenty-five years in prison.

> (3) Except as provided in division (C)(4) of this section, if the prisoner is serving a sentence for two or more homicide offenses, none of which are an aggravated homicide offense, and the offender was the principal offender in two or more of those offenses, the prisoner is eligible for parole after serving thirty years in prison.

> (4) If the prisoner is serving a sentence for one or more offenses and the sentence permits parole earlier than the parole eligibility date specified in division (C)(1), (2), or (3) of this section, the prisoner is eligible for parole after serving the period of time in prison that is specified in the sentence.

R.C. 2967.132(C). A "homicide offense" is defined as "a violation of section 2903.02, 2903.03, 2903.04, or 2903.041 of the Revised Code or a violation of section 2903.01 of the Revised Code that is not an aggravated homicide offense." R.C. 2967.132(A)(2).

{¶ 33} R.C. 2967.132(E)(1) provides that "[o]nce a prisoner is eligible for parole pursuant to division (C) or (D) of this section, the parole board, within a reasonable time after the prisoner becomes eligible, shall conduct a hearing to consider the prisoner's release on parole under parole supervision." The statute sets forth the following requirements for the parole review process that the parole board must follow:

> The parole board shall ensure that the review process provides the prisoner a meaningful opportunity to obtain release. In addition to any other factors the board is required or authorized to consider by rule or statute, the board shall consider the following factors as mitigating factors:
>
> (a) The chronological age of the prisoner at the time of the offense and that age's hallmark features, including intellectual capacity, immaturity, impetuosity, and a failure to appreciate risks and consequences;
>
> (b) The family and home environment of the prisoner at the time of the offense, the prisoner's inability to control the prisoner's surroundings, a history of trauma regarding the prisoner, and the prisoner's school and special education history;
>
> (c) The circumstances of the offense, including the extent of the prisoner's participation in the conduct and the way familial and peer pressures may have impacted the prisoner's conduct;
>
> (d) Whether the prisoner might have been charged and convicted of a lesser offense if not for the incompetencies associated with youth such as the prisoner's inability to deal with police officers and prosecutors during the prisoner's interrogation or possible plea agreement, or the prisoner's inability to assist the prisoner's own attorney;
>
> (e) Examples of the prisoner's rehabilitation, including any subsequent growth or increase in maturity during imprisonment.

R.C. 2967.132(E)(2).

{¶ 34} R.C. 2967.132(G) provides that "[i]f the parole board denies release on parole pursuant to this section, the board shall set a time for a subsequent release review and hearing in accordance with rules adopted by the department of rehabilitation and correction in effect at the time of the denial." R.C. 2967.132(H) contains notice requirements, providing as follows: "In addition to any notice required by rule or statute,

the parole board shall notify the state public defender, the victim, and the appropriate prosecuting attorney of a prisoner's eligibility for review under this section at least sixty days before the board begins any review or proceedings involving that prisoner under this section."

## C. Application

{¶ 35} There is no dispute among the parties that R.C. 2967.132 applies to relator since he is serving a sentence for offenses committed while he was under eighteen years of age. Rather, the parties dispute when R.C. 2967.132 requires that relator's next parole hearing be held. Relator asserts he is entitled to immediate consideration under R.C. 2967.132. Respondent asserts to the contrary that R.C. 2967.132 does not entitle relator to a parole hearing earlier than his previously scheduled hearing in August 2024. Thus, this action presents a question of law regarding when the parole board is required to hold a parole hearing under the terms of R.C. 2937.132.

{¶ 36} As the issue presented in this matter is one of statutory interpretation, the meaning of the law must be considered de novo without any required deference to agency interpretation. *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 172 Ohio St.3d 225, 2022-Ohio-4677, ¶ 42-43. *See State ex rel. McDonald v. Indus. Comm.*, 10th Dist. No. 20AP-386, 2021-Ohio-4494, ¶ 12, citing *State ex rel. Natl. Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 152 Ohio St.3d 393, 2017-Ohio-8348, ¶ 14 ("Statutory interpretation presents a question of law subject to a de novo standard of review."). When considering questions of statutory interpretation under Ohio law, " 'it is never mandatory for a court to defer to the judgment of an administrative agency' and a court should never do so to 'alter the meaning of clear text.' " *State ex rel. Autozone Stores, Inc. v. Indus. Comm. of Ohio*, 10th Dist. No. 21AP-294, 2023-Ohio-633, ¶ 16, quoting *TWISM* at ¶ 42.

{¶ 37} When interpreting statutory provisions, the "paramount concern is the legislative intent in enacting the statute." *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, ¶ 21, citing *State ex rel. United States Steel Corp. v. Zaleski*, 98 Ohio St.3d 395, 2003-Ohio-1630, ¶ 12. To discern legislative intent, a court must "first consider the statutory language, reading all words and phrases in context and in accordance with the

rules of grammar and common usage." *Gabbard v. Madison Local School Dist. Bd. of Edn.*, 165 Ohio St.3d 390, 2021-Ohio-2067, ¶ 13, citing *Morrissey* at ¶ 21. *See Natl. Lime & Stone Co.* at ¶ 14 (stating that the role of a court is "to evaluate the statute as a whole and to interpret it in a manner that will give effect to every word and clause, avoiding a construction that will render a provision meaningless or inoperative"). " 'If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary.' " *Natl. Lime & Stone Co.* at ¶ 14, quoting *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545 (1996). *See Johnson v. Montgomery*, 151 Ohio St.3d 75, 2017-Ohio-7445, ¶ 15 ("Our review starts and stops with the unambiguous language of the statute.").

{¶ 38} The various provisions of R.C. 2967.132 accomplish multiple aims including, but not limited to, the following: defining the individuals to whom the statute applies, setting parole eligibility under the statute, specifying the time in which a hearing must be held for individuals who have become eligible under the statute, requiring the consideration of specified factors at the hearing, requiring notification of certain parties before a hearing, and providing the duties of the parole board upon granting or denying parole under the statute. As there is no dispute that R.C. 2967.132 applies to relator, the next step is to determine when relator is eligible for parole under the terms of the statute.

{¶ 39} Relator was convicted of aggravated murder and murder for the killing of two individuals. Because these offenses did not involve the purposeful killing of three or more persons and, therefore, they were not aggravated homicide offenses under the statute,[2] the provisions of R.C. 2967.132(C) apply to relator. R.C. 2967.132(C) contains four subsections, each providing different parole eligibility dates based upon whether the offender committed a homicide offense, the number of homicide offenses committed by the offender, and the parole eligibility provided under the terms of the offender's sentence. As relator is serving a sentence for two homicide offenses as defined by R.C. 2967.132 and his sentence permitted parole earlier than the parole eligibility date provided in R.C. 2967.132(C)(3), the provisions of R.C. 2967.132(C)(4) control relator's eligibility for parole under the statute. Pursuant to R.C. 2967.132(C)(4), an offender is "eligible for parole after

---

[2] *See* R.C. 2967.132(A)(1).

serving the period of time in prison that is specified in the sentence." Considering that relator's sentence provided he was eligible for parole after 20 years,[3] he is eligible for parole under R.C. 2967.132.

{¶ 40} Having found relator to be eligible for parole under R.C. 2967.132, it is next necessary to consider when the parole board must conduct the hearing required by R.C. 2967.132. Before reviewing any of the arguments on this point, a review of the history of relator's parole proceedings is warranted. Prior to the passage of S.B. 256 and the enactment of R.C. 2967.132, respondent found relator to be eligible for parole under the terms of his sentence and the law existing at the time of his sentencing. Relator was twice considered for parole, once in 2011 and again in 2019. In its decision denying parole in 2019, the parole board deferred future consideration of relator's parole for a period of 59 months—slightly less than 5 years. From this continuance, relator's next parole hearing was scheduled to occur in August 2024.

{¶ 41} Respondent asserts R.C. 2967.132 does not entitle relator to a new hearing at this time, though its position on this issue has changed somewhat over the course of the litigation. In its motion to dismiss, respondent asserted that relator's "latest suitability hearing followed an implementation of [S.B.] 256 via R.C. 2967.132." (Respondent's Mot. to Dismiss at 11.) However, as the record now makes clear and respondent admits, relator's latest parole hearing occurred in 2019—over a year prior to the effective date of R.C. 2967.132 as enacted by S.B. 256.[4]

{¶ 42} With respondent's prior assertion having been revealed to be factually inaccurate, respondent now asserts relator "is not entitled to an earlier parole board hearing at this time," but instead "will be eligible for a S.B. 256 hearing in August 2024." (Respondent's Brief at 6.) Respondent points to the following statement from Clemans's affidavit in support of this assertion:

---

[3] As over 20 years elapsed from the time of relator's sentencing to the effective date of R.C. 2967.132, it is unnecessary to consider whether relator qualified for any reduction of the time until eligibility for parole under the law in effect at the time of his sentencing, or what effect any such reduction might have on eligibility under R.C. 2967.132. *See* former R.C. 2967.13 (defining parole eligibility and providing for diminishment of the time until eligibility as provided in certain specified sections of the Revised Code).

[4] Indeed, relator's latest parole hearing occurred before S.B. 256 was even introduced on December 23, 2019.

> It is the position of the Parole Board that although [relator's] September 24, 2019 parole hearing was held prior to the enactment of [R.C.] 2967.132, the hearing is applicable to Section G: "If the parole board denies release on parole pursuant to this section, the board shall conduct a subsequent release review not later than five years after release was denied." At the September 24, 2019[] hearing, [relator's] next proceeding was continued to August, 2024 (five years).

(Respondent's Exhibit A at 4.) Clemans also stated that relator "will be eligible for a [S.B.] 256 hearing in August, 2024." (Respondent's Exhibit A at 4.) Thus, respondent asserts relator cannot demonstrate entitlement to relief under R.C. 2967.132 because relator's next parole hearing is scheduled to occur not later than five years after his September 2019 parole hearing, thereby complying with R.C. 2967.132(G). The clear and unambiguous text of R.C. 2967.132(G) does not support this assertion.

{¶ 43} R.C. 2967.132(G) provides that "[i]f the parole board denies release on parole *pursuant to this section*, the board shall set a time for a subsequent release review and hearing in accordance with rules adopted by the department of rehabilitation and correction in effect at the time of the denial." (Emphasis added.) Because, as respondent admits, relator has not had a parole hearing following the implementation of R.C. 2967.132, the parole board cannot have denied relator release on parole *pursuant to that section* of the Ohio Revised Code. Since relator has not been denied parole pursuant to R.C. 2967.132, R.C. 2967.132(G) does not apply to control the timing of the hearing required by R.C. 2967.132. Instead, the question of when the hearing required by R.C. 2967.132 must be held is answered by R.C. 2967.132(E)(1).

{¶ 44} R.C. 2967.132(E)(1) provides that "[o]nce a prisoner is eligible for parole *pursuant to division (C) or (D) of this section*, the parole board, within a reasonable time after the prisoner becomes eligible, shall conduct a hearing to consider the prisoner's release on parole under parole supervision." (Emphasis added.) From its plain text, R.C. 2967.132(E)(1) makes clear that once eligibility requirements of either R.C. 2967.132(C) or (D) have been met, the parole board is required to hold a parole hearing within a reasonable time after the meeting of such eligibility requirement. Although relator was already eligible for parole under the terms of his sentence, this does not supersede the requirement in R.C. 2967.132(E)(1) to hold a hearing once eligibility is met once eligibility

is met pursuant to R.C. 2967.132(C) or (D). Therefore, pursuant to R.C. 2967.132(E)(1), respondent was under a clear legal duty to hold a parole hearing in compliance with the requirements of R.C. 2967.132 within a reasonable time of relator's eligibility under the statute.

{¶ 45} Respondent raises a number of other points in arguing relator is not entitled to a writ of mandamus. First, respondent notes inmates do not have a constitutional or inherent right to be released on parole. The lack of a right to release on parole is well-established under Ohio law. *See State ex rel. Keith v. Ohio Adult Parole Auth.*, 141 Ohio St.3d 375, 2014-Ohio-4270, ¶ 19 ("A prisoner has no constitutional or statutory right to parole."); *Heddleston v. Mack*, 84 Ohio St.3d 213, 214 (1998) (stating that "earlier consideration of parole is not tantamount to a legal right to release from prison"). However, relator is not contending that he has a constitutional or statutory right to *release* on parole. He is contending that he has a right to a *hearing* under R.C. 2967.132.

{¶ 46} Next, respondent asserts the parole board "provided meaningful consideration when it denied [relator's] suitability for parole." (Respondent's Brief at 11.) Respondent states that it had ample bases upon which to deny parole to relator including the seriousness of the offenses, relator's alleged failure to complete institutional programming, and relator's institutional conduct. However, relator is not seeking relief related to the parole board's prior consideration of his suitability for parole. These points are irrelevant to the question of relator's rights and respondent's duty under R.C. 2967.132.

{¶ 47} Respondent also points to relator's behavioral record while in ODRC custody—arguing that such record "readily demonstrates that [relator] failed to demonstrate his maturity and adjust his conduct to follow rules." (Respondent's Brief at 7-8.) From this, respondent argues that relator "cannot viably argue that he has not had a chance to demonstrate positive maturity for the parole board's consideration so that they would afford him parole." (Respondent's Brief at 8.) Respondent's argument puts the analytical cart before the horse. Whatever relevancy information related to relator's institutional behavior may have to the parole board's consideration of suitability for release at the next parole hearing, such information has no bearing on respondent's duty under R.C. 2967.132 to hold a hearing within a reasonable time of relator's eligibility under that statute.

{¶ 48} Next, respondent argues mandamus is not appropriate because such writ will not issue to compel a vain act. Indeed, it is well-established that mandamus will not issue to compel a vain act. *See State ex rel. Strothers v. Turner*, 79 Ohio St.3d 272, 274 (1997); *State ex rel. Keith v. Gaul*, 147 Ohio St.3d 270, 2016-Ohio-5566, ¶ 16. Respondent asserts relator will have his next parole hearing consistent with S.B. 256 and R.C. 2967.132 in August 2024. In addition to any other notice requirement provided pursuant to statute or an administrative rule,[5] R.C. 2967.132(H) requires notice to certain specified parties "at least sixty days before the board begins any review or proceedings involving that prisoner under this section." Respondent does not point to any notice requirement or other consideration that would prevent a hearing from occurring more quickly than the hearing currently scheduled for later this year. Thus, considering the particular facts and circumstances presented in this matter, including the time at which relator became eligible under R.C. 2967.132, the requirement in R.C. 2967.132 to hold a parole hearing within a reasonable time of eligibility under the statute, and the lack of an asserted or established impediment to scheduling a hearing prior to the existing hearing in August 2024, the magistrate does not find the issuance of a writ of mandamus would be a vain act at this time.

{¶ 49} Finally, the magistrate considers the final requirement for the issuance of a writ of mandamus—whether relator has an adequate remedy at law. Respondent does not argue that relator possesses an adequate remedy at law. R.C. 2967.132 provides no mechanism for enforcement. Furthermore, other avenues of relief, such as a declaratory judgment action, would not provide an adequate remedy because in order to obtain complete relief, relator requires an order compelling respondent to act. *See State ex rel. Stark Cty. Bd. of Elections v. Stark Cty. Bd. of Commrs.*, 165 Ohio St.3d 201, 2021-Ohio-1783, ¶ 16. Therefore, the magistrate finds relator lacks an adequate remedy in the ordinary course of the law.

---

[5] *See, e.g.*, Ohio Adm. Code 5120:1-1-11(I) (providing requirements for notice of a release consideration hearing); R.C. 2930.12; R.C. 2930.16.

## D. Conclusion

{¶ 50} In conclusion, the magistrate finds relator has established he has a clear legal right to a parole hearing within a reasonable time after he became eligible under R.C. 2967.132, that respondent was under a clear legal duty to provide such relief pursuant to R.C. 2967.132, and the absence of an adequate remedy at law.[6] Accordingly, it is the decision and recommendation of the magistrate that relator's request for a writ of mandamus should be granted to the following extent: that a writ issue ordering respondent to hold a hearing pursuant to R.C. 2967.132 with all deliberate speed and in compliance with the requirements provided under that statute and other applicable law.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

### NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.

---

[6] The magistrate notes that the duty arising under R.C. 2967.132 is specifically a duty for the parole board. However, because, as previously noted, the parole board is an administrative section of OAPA, which itself is an administrative section of the Division of Parole and Community Services, which in turn is a division of ODRC, such distinctions are without meaningful difference in terms of the duty for the administrative agency arising under R.C. 2967.132. *See* R.C. 5149.02 ("There is hereby created in the division of parole and community services of the department of rehabilitation and correction at bureau level an adult parole authority. The adult parole authority consists of its chief, a field services section, and a parole board.").